IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SHAUN THOMPSON, | : |
| Plaintiff, | : |
| vs. | : CIVIL ACTION NO. |
| | : 1:13-CV-1555-CC |
| NORFOLK SOUTHERN RAILWAY COMPANY, | : |
| Defendant. | : |

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. No. 62] and Plaintiff's Motion to Exclude Undisclosed Evidence and Witness or for Discovery [Doc. No. 64]. For the reasons stated herein, the Court denies Defendant's Motion for Summary Judgment and grants Plaintiff's Motion to Exclude Undisclosed Evidence and Witness.

**I.  BACKGROUND**

   A.  Statement of Facts

Unless otherwise indicated, the following facts are material and undisputed in this action.

   *1.  Plaintiff's On-the-Job Injury*

Plaintiff Shaun Thompson ("Plaintiff" or "Thompson") worked for Defendant Norfolk Southern Railway Company ("Defendant" or "Norfolk Southern") for several years and most recently as a locomotive engineer trainee. Plaintiff is represented by the United Transportation Union ("UTU"). Norfolk Southern and its unions, such as the UTU, are parties to collective bargaining agreements that establish the rates of pay, rules, and working conditions of represented employees, such as Plaintiff.

Plaintiff alleges in this case that while working a regular assignment in East

Point Yard on the night of March 31-April 1, 2012, he felt pain in his leg while attempting to adjust a drawbar.  Plaintiff was able to finish his shift, but before leaving work on the morning of April 1, 2012, he notified a supervisor that he was in pain.  In response to Plaintiff's report of an injury, the on-site supervisor, Michael Chambliss, asked Plaintiff to stay while two other supervisors were summoned.

Chambliss alerted his superior, Sheldon Crowley, of Plaintiff's alleged injury. Crowley and another supervisor, Dominik Browne, traveled to the yard where Plaintiff was working and met with Plaintiff.  Browne asked Plaintiff if he needed medical attention, and Plaintiff said he did not. Plaintiff told his supervisors that he wanted to go home, elevate his leg, and put some ice on it.

### 2. *The Investigation of the Incident*

Upon questioning by Crowley and Browne about the incident, Plaintiff informed them that he felt a pain while adjusting a drawbar.  Crowley and Brown testified that Plaintiff demonstrated that he backed up to the drawbar and lifted the bar with his hands behind his back, which is an approved technique.  Two other Norfolk Southern supervisors, Justin Turner and Michael Chambliss, were also working in the building at the time and testified that they saw Plaintiff demonstrate how he had been adjusting the drawbars.  Plaintiff does not dispute that these individuals testified to Plaintiff having done such a demonstration, but Plaintiff disputes that he actually did a demonstration.

In an effort to identify the equipment involved in the incident,[1] Norfolk Southern secured a video that showed Plaintiff working that night.  The parties

---

[1] Plaintiff maintains that this was not Norfolk Southern's motivation for securing the video, as he had already told his supervisors that he was injured adjusting a drawbar.  Plaintiff emphasizes that after he was eventually released to go home, the supervisors watched several hours of surveillance video from the facility where Plaintiff had been working, including parts of the video that had nothing to do with rail cars or drawbars. Norfolk Southern concedes that most of the video the supervisors watched did not even show anyone working.

dispute whether the video shows Plaintiff lifting a drawbar while facing the drawbar or opening a knuckle.[2] Norfolk Southern contends that the video shows the former, while Plaintiff maintains that the video shows the latter.

Plaintiff and his co-worker, Josh Newmon, were doing various railroad tasks on the night in question, including both adjusting drawbars and opening knuckles. At some point, Plaintiff told Newmon that he injured his leg while attempting to adjust a drawbar. After Plaintiff was injured, the supervisors investigating the injury asked Newmon to come talk to them. Newmon initially told the investigating officers that Plaintiff had not violated any rules and had done everything correctly. Later, after Browne showed Newmon the surveillance video and asked him "how did he explain the drawbar being improperly operated," Newmon changed his story and stated in the interview and in hand-written statements that Plaintiff used an improper method to align the drawbars.[3]

Browne felt that Newmon, by initially saying that Plaintiff had worked correctly, told a lie and made false and conflicting statements. As a new hire, Newmon was still in a probationary period. Norfolk Southern, as a practice, rejects dishonest and untrustworthy applicants and takes dishonesty seriously among all employees. Newmon was not disciplined at all, but Norfolk Southern contends this was so because Newmon supplemented his initial statements after observing the surveillance video.

Browne, Crowley, and two other supervisors also walked the yard to investigate. They found Plaintiff's work gloves on top of a fence, which struck them

---

[2] Knuckles (or couplers) are a part of the mechanism used to connect rolling stock in a train. Knuckles are mounted on the ends of steel bars called drawbars. The other end of a drawbar is attached to the railroad car on a pivot.

[3] A railroad employee may adjust drawbars two ways, including putting his or her back to the drawbar and pushing, or facing the drawbar and pushing. An employee may not pull a drawbar. Newmon incorrectly thinks it is wrong to face a drawbar and push it.

- 3 -

as odd. Browne testified that he thought Plaintiff might have actually injured himself climbing or jumping off a gate.

After investigating the incident, the supervisors wrote a report about the injury Plaintiff allegedly sustained. The initial injury report made no mention of an improper drawbar adjustment. The write-up said that the surveillance footage showed Plaintiff kicking a gate.

### 3. *The Disciplinary Hearing and Termination Decision*

On April 3, 2012, Plaintiff notified the supervisors that he had seen a doctor, making the injury reportable. The next day, Norfolk Southern sent Plaintiff a letter notifying him that Norfolk Southern would convene an investigatory hearing at which Browne would present evidence concerning Plaintiff improperly adjusting drawbar(s) between 6:16 p.m. and 11:59 p.m. on March 31, 2012, and making false and/or conflicting statements about how he broke his leg on the night of the incident.

Newmon was told he would be held out of work until Plaintiff's disciplinary hearing. Browne testified that he was not entirely certain what he said to Newmon prior to the hearing, but what Browne stated in his deposition was the following: "If I remember correctly, we told him you've – you've lied to us once, you corrected yourself, we don't expect you to lie to us again, you need to tell the truth, you're off pending the investigation." (Dep. of Browne at 48.)

Norfolk Southern management had the burden of proving at the investigatory hearing whether Plaintiff was responsible for the charged violations. At the hearing, one railroad supervisor acts as the "charging officer," in a role similar to that of a prosecutor. Another railroad supervisor presides over the hearing and is called the "hearing officer." The hearing officer makes rulings, asks questions, decides whether to find the accused guilty, and decides on punishment.

Plaintiff was represented at the hearing by two UTU union officials, UTU Vice General Chairman J.C. Roy and Local Chairman Michael White. The UTU trained

- 4 -

Roy on how to represent someone at an investigatory hearing, including presenting seminars during which arbitrators spoke on what they considered when deciding cases. Roy has represented employees at over 100 hearings. However, Roy is not an attorney.

Gaylon Bancroft, the railroad company official serving as the hearing officer, had ex parte discussions with Browne prior to the hearing. During these ex parte communications, Browne told Bancroft that he had a video that showed Plaintiff "jerking on a drawbar." Roy did not get to meet with Bancroft ex parte.

At Plaintiff's hearing, the charging officer showed an hour of video. Only eleven seconds of the video were offered as substantive evidence. Neither the charging officer nor any of the other officers contemporaneously observed Plaintiff adjust a drawbar on the night in question, but they have testified to having observed Plaintiff adjusting the drawbar through surveillance footage. Three Norfolk Southern witnesses testified that they heard Plaintiff claim that he had used correct technique to adjust a drawbar and that Plaintiff had demonstrated to them the correct technique that he used. Plaintiff denied that he had demonstrated drawbar technique to anyone.

Plaintiff and his representatives were given the opportunity to present his side of the story and to cross examine Norfolk Southern's witnesses and object to Norfolk Southern's evidence. The hearing was adjourned each time Norfolk Southern introduced an exhibit to allow Plaintiff and his representatives to examine and consider each document. Plaintiff, however, had no notice of the specifics of the evidence that would be used against him at the hearing. Moreover, Plaintiff's representative at the hearing was not allowed to meet with witnesses in advance. Roy later testified to a conflict of interest in not wanting to question Newmon too strongly and cost Newmon his job. Roy was not shown the surveillance video before the hearing, and Roy had never seen the write-up until he was deposed in this case.

- 5 -

Bancroft, the hearing officer, decided to terminate Plaintiff. When weighing credibility of witnesses, Bancroft did not take into account that Newmon had changed his story and did not think about it. Bancroft says he found Newmon credible because he was "offered the opportunity and came clean," because the officers talked to him. Plaintiff is the only Georgia Division employee disciplined for improperly adjusting a drawbar in the prior three years.

### 4.   *Plaintiff's Appeal to the Public Law Board*

Under the RLA, after exhaustion of the on-property appeals process, a party may elect to challenge the discipline before arbitration, including the Public Law Board ("PLB").[4] The UTU, on Plaintiff's behalf, submitted a 22-page brief to the PLB. The brief attacked the hearing below on factual and procedural grounds. However, the brief did not allege that Plaintiff was denied due process.

One of the members of the PLB who decided Plaintiff's appeal was a union representative, Mr. Piserchia, who is employed by the Defendant as Director of Labor Relations. Another arbitrator was a company representative. The third arbitrator was Mr. Ray, who worked for the Defendant railroad and its predecessor railroads from 1976 until he retired in 2000 as its Assistant Vice President of Labor Relations. Mr. Ray was designated as the neutral chairperson.

The PLB considers only the written transcript and exhibits from below.[5] After receiving Plaintiff's objections and the record, the PLB issued a decision on March 18, 2013. The PLB concluded that there was "substantial evidence" to support the discipline.

---

[4] Plaintiff previously challenged discipline before the PLB. Plaintiff was terminated in 2009 and grieved his termination. The PLB overturned Plaintiff's 2009 termination and returned him to work without back pay.

[5] Mr. Roy protested that whoever transcribed the transcript could not hear everything that was said.

B.   Procedural History and Parties' Contentions

Plaintiff has filed suit under the Federal Rail Safety Act's ("FRSA") anti-retaliation provision, 29 U.S.C. § 20109.  Plaintiff alleges that Defendant illegally retaliated against him after he reported his on-the-job injury.  Plaintiff specifically argues that he was disciplined on baseless charges that he improperly adjusted a drawbar and that he made false and conflicting statements to his supervisors.

Norfolk Southern has moved for summary judgment, arguing that the instant case is barred because factual issues essential to Plaintiff's claim have already been fairly resolved against him through the Railway Labor Act dispute resolution process and because Plaintiff has no admissible evidence beyond his own speculation that his termination was the result of any impermissible motivation. This summary judgment motion has been fully briefed by the parties and is ripe for review.

Shortly after Norfolk Southern moved for summary judgment, Plaintiff filed a Motion to Exclude Undisclosed Evidence and Witness or for Discovery (the "Motion to Exclude") [Doc. No. 64].  The Court will address the Motion to Exclude before resolving the summary judgment motion.

## II.   MOTION TO EXCLUDE

Plaintiff moves the Court to exclude a witness and evidence that Plaintiff contends were disclosed for the first time in Defendant's Motion for Summary Judgment.  The evidence at issue consists of the declaration of Philip Piserchia, the Director of Labor Relations for Norfolk Southern.  Attached to Defendant's Motion for Summary Judgment, this declaration includes Mr. Piserchia's testimony that he examined the railroad's employment records and that "many employees have been terminated for dishonesty." (Declaration of Philip Piserchia "Piserchia Decl." at ¶ 2.)  Piserchia then lists by name "[s]ome of those in the Georgia Division" who have been terminated for dishonesty.  (Id.)  Plaintiff maintains that Norfolk Southern never identified Mr. Piserchia as a person who may have information relevant to its

- 7 -

defenses in this case. As such, Plaintiff requests that the Court not consider this witness or evidence in ruling on the summary judgment motion and exclude it from the trial of this case. Plaintiff alternatively requests the opportunity to conduct discovery related to the testimony and evidence.

Defendant argues in response that Plaintiff did not ask for the information at issue during discovery and that Mr. Piserchia merely summarizes and authenticates company records. Defendant further states that it has offered to make Mr. Piserchia available for a deposition, as well as produce records in connection with his statement. Defendant consents to Plaintiff's supplementing his opposition to the summary judgment motion to discuss the Piserchia evidence if NSRC can likewise reply to any such supplement.

Pursuant to Federal Rule of Civil Procedure 26, without awaiting a discovery request, a party must set forth in its initial disclosures "the name and, if known, the address and telephone number of each individual likely to have discoverable information–-along with the subjects of that information–-that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Additionally, Rule 26(a)(1)(A)(ii) requires the disclosure of documents "a party may use to support its claims or defenses." A party who "fails to provide information or identify a witness as required by Rule 26 . . . is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Here, in violation of Rule 26's disclosure requirement, Defendant failed to put Plaintiff on notice that Mr. Piserchia might have discoverable information on which Defendant intended to rely to support its defenses. While Defendant claims that Mr. Piserchia does not assert any facts from personal knowledge, Mr. Piserchia expressly states in his declaration that he is "giv[ing]the statement based upon [his] personal knowledge." (Piserchia Decl., Preliminary Statement.) Further, contrary to Defendant's argument that Mr. Piserchia summarizes business records and

authenticates others, Mr. Piserchia does not describe or identify any specific documents at all in the declaration related to the dishonesty of former Norfolk Southern employees. Rather, he states that he has reviewed various employment records and then testifies concerning his conclusions.

Defendant now belatedly offers to allow Plaintiff to depose Mr. Piserchia and to produce records in connection with his statement, but Defendant has made no effort to argue that its failure to disclose Mr. Piserchia initially was either substantially justified or harmless in the first place. Therefore, the exclusion of Mr. Piserchia's testimony from consideration on summary judgment and at trial is the appropriate sanction. See Fed. R. Civ. P. 37(c)(1). Defendant is prohibited from relying on the testimony of Mr. Piserchia.

Further, because the Court agrees with Plaintiff that Defendant has needlessly caused this dispute, the Court will award Plaintiff its reasonable expenses, including attorney's fees, caused by Defendant's failure to comply with Rule 26 and otherwise resolve this dispute before Plaintiff was forced to file the instant motion. See Fed. R. Civ. P. 37(c)(1)(A). The Court directs Plaintiff's counsel to file a declaration and supporting documentation that sets forth the reasonable expenses, including attorney's fees, incurred by Plaintiff in relation to this motion.

### III.   MOTION FOR SUMMARY JUDGMENT

    A.   Standard of Review

Summary judgment is proper when no genuine issue as to any material fact is present and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In seeking summary judgment, the moving party bears the initial responsibility to demonstrate there is no genuine issue as to any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). The moving party's burden is discharged merely by showing that there is an absence of evidence supporting an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "Only

when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party and resolve all facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999) (citation omitted). The moving party is entitled to summary judgment when the non-moving party has failed to make a sufficient showing on an essential element of the case with respect to which the non-moving party has the burden of proof. Celotex, 477 U.S. at 323.

A fact is material when the controlling substantive law identifies it as an essential element of the non-moving party's case. Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Additionally, an issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Id. An issue of fact is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or "not significantly probative." Id. at 249-250. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

### B.     Analysis

The FRSA prohibits a railroad from retaliating against an employee for, among other things, reporting an on-the-job injury. In pertinent part, the Act states the following:

> A railroad carrier in interstate or foreign commerce . . . may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done . . . to notify, or attempt to notify, the railroad carrier or the Secretary of Transportation of a work-related personal injury or work-related illness

of an employee[.]

49 U.S.C. § 20109(a)(4).

The FRSA provides a framework, which was borrowed from the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR-21"), for employees to establish a retaliation claim, 49 U.S.C. § 20109(d)(2)(A); 49 U.S.C. § 42121(b)(2)(B)(i)-(ii). To establish a retaliation claim under the FRSA, a plaintiff must show by a preponderance of the evidence that: (1) that he engaged in protected activity; (2) that he suffered discharge or discrimination in the terms or conditions of his employment; and (3) that the protected activity was a contributing factor in the adverse employment action. Majali v. United States DOL, 294 F. App'x 562, 566 (11th Cir. 2008); see also Allen v. Admin. Review Bd., 514 F.3d 468, 475-76 (5th Cir. 2008) (stating as a separate element of the prima facie case that the employee was aware that the employee engaged in protected activity). If the plaintiff establishes a prima facie case of retaliation, the burden then shifts to the employer to prove by clear and convincing evidence that it would have taken the same unfavorable personnel action in the complete absence of the plaintiff's protected activity. Majali, 294 F. App'x at 566-67. The plaintiff's protected activity is a "contributing factor" in the unfavorable personnel action if, alone or in connection with other factors, it tended to affect the outcome of the decision. Consolidated Rail Corp. v. United States Dep't of Labor, 567 F. App'x 334, 337 (6th Cir. 2014); see also Ameristar Airways, Inc. v. Admin. Rev. Bd., 650 F.3d 562, 567 (5th Cir. 2011).

   *1.   Issue Preclusion*

Norfolk Southern first argues that certain factual issues in this case, which are necessary to Plaintiff's claim, have already been resolved against Plaintiff by the decision of the PLB and that Plaintiff is precluded from relitigating those issues before this Court. Specifically, Defendant maintains that Plaintiff is precluded from relitigating the PLB's factual findings that Plaintiff was dishonest when he reported his injury and that Plaintiff's dishonesty caused his termination. Defendant

contends that this prevents Plaintiff from being able to meet the first element of his prima facie case because his injury report was not made in good faith.

The Court finds that Norfolk Southern's argument is foreclosed by the persuasive decision issued by the Fifth Circuit in <u>Grimes v. BNSF Ry. Co.</u>, 746 F.3d 184 (5th Cir. 2014), which directly addresses whether an arbitral finding of fact by the PLB collaterally estops a federal judicial proceeding brought under the FRSA. Application of Eleventh Circuit law setting forth the requirements for the application of collateral estoppel dictate the same conclusion.

Collateral estoppel precludes a party from relitigating an arbitral finding if the arbitration "afforded litigants the 'basic elements of adjudicatory procedure.'" <u>Univ. Am. Barge Corp. v. J-Chem., Inc.</u>, 946 F.2d 1131, 1137 (5th Cir. 1991) (citation omitted). In the Eleventh Circuit, issue preclusion requires the following:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action.

<u>Greenblatt v. Drexel Burnham Lambert, Inc.</u>, 763 F.2d 1352, 1360 (11th Cir. 1985) (citation omitted). In addition to the foregoing requirements, "the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the earlier proceeding." <u>Id.</u> (citation omitted).

Here, there is no dispute that the first three elements necessary for the PLB's findings to have preclusive effect are met. The issue of whether Plaintiff honestly reported the circumstances of his injury is the same issue adjudicated by the PLB. Second, the issue was actually litigated in the earlier proceeding, and PLB expressly found that Plaintiff was dishonest. Third, this finding by the PLB was necessary to its finding that substantial evidence proved Norfolk Southern's charge of dishonesty against Plaintiff.

As the Fifth Circuit concluded in the factually similar <u>Grimes</u> decision, however, Plaintiff did not have a full and fair opportunity in this case to litigate the

arbitral proceeding. In Grimes, a railroad employee filed an action for retaliation alleging that he had been retaliated against for reporting a work-related injury. The district court originally granted a summary judgment motion filed by the railroad, holding that the PLB's administrative finding of fact that the plaintiff had been dishonest was entitled to preclusive effect in the judicial proceeding. On appeal, the Fifth Circuit reversed the district court, holding that "[c]ollateral estoppel was inappropriate because the procedures of the PLB did not afford Grimes the basic procedural protections of a judicial forum." Grimes, 746 F.3d at 188.

In reaching this decision, the Fifth Circuit looked first to the factors that were present in the Eleventh Circuit's Greenblatt decision, cited supra, where the Eleventh Circuit did give preclusive effect to arbitral findings of fact. Grimes, 746 F.3d at 188. These factors included that "both parties had been represented by counsel, made opening and closing arguments, were permitted to examine and cross-examine witnesses and to present relevant evidence." Id. Additionally, the arbitrators were experts in the matter. Id.

The Grimes court then reasoned that the basic procedural protections of a judicial forum were absent in the case before it and, in doing so, relied heavily on two Federal Employers' Liability Act ("FELA") cases, Graves v. Burlington Northern & Santa Fe Ry. Co., 77 F. Supp. 2d 1215 (E.D. Okla. 1999) and Kulavic v. Chicago & Illinois Midland Ry. Co., 1 F.3d 507 (7th Cir. 1993). Similar to the findings in the FELA cases, the Fifth Circuit found that the following circumstances characterized the arbitration proceeding: "(1) the hearing was conducted by the railroad; (2) the plaintiff was represented by the union rather than an attorney; (3) the termination decision was made by a railroad employee, not by an impartial fact finder such as a judge or jury; (4) the rules of evidence do not appear to have been controlling; and (5) and most crucially, the PLB's affirmance was based solely on the record." Grimes, 746 F.3d at 189. The Grimes court further emphasized as the primary reason for its decision that "because it was the railroad that conducted the investigation and

hearing and terminated Grimes, and because the PLB only reviewed a closed record, the procedures were not adequate for collateral estoppel to apply." Id. at 190.

As in Grimes, the arbitration procedures at issue in this case did not adequately protect Plaintiff's rights. First, Norfolk Southern's investigatory hearing was conducted by a railroad supervisor, not a judge. Second, as opposed to an impartial fact finder resolving disputed issues, the railroad supervisor made the factual finding that Plaintiff did not report his on-the-job injury honestly, which, in part, led to the railroad supervisor's decision to terminate Plaintiff. Third, the PLB's affirmance of the hearing officer's decision was based only upon the PLB's review of the hearing transcript and exhibits. Thus, the proceeding lacked neutral arbitrators.

For all of the above reasons, the Court concludes that Defendant cannot meet its burden of demonstrating that the collateral estoppel doctrine compels this Court to give the PLB's findings preclusive effect. This FRSA action is not barred.

    *2.    Prima Facie Case of Retaliation*

Defendant next argues that Plaintiff cannot make a prima facie showing of prohibited retaliatory motive. The Court disagrees and finds that there are least genuinely disputed issues of material fact as to whether Plaintiff can make such a showing.

As an initial matter, there is no dispute that Defendant knew about Plaintiff's injury report and that Plaintiff suffered an unfavorable personnel action. The elements of Plaintiff's prima facie case that are in dispute are whether Plaintiff reported an injury in "good faith" and thus engaged in protected activity and whether the protected activity was a contributing factor in the adverse employment action.

There are several genuinely disputed issues of material fact concerning these two disputed elements of Plaintiff's prima facie case. These disputed facts include the following: (1) whether Plaintiff demonstrated to his supervisors how he had

- 14 -

been adjusting drawbars; (2) whether the video shows Plaintiff lifting a drawbar while facing the drawbar or opening a knuckle; (3) whether Plaintiff was warned not to see a doctor, notwithstanding evidence that at least one of Plaintiff's supervisors asked Plaintiff whether he needed medical attention; and (4) whether Plaintiff was warned by his supervisors that if his injury became reportable, things would not go well for him.

While Plaintiff has not presented direct evidence of retaliatory motive, Plaintiff has presented sufficient circumstantial evidence for this case to go to trial. First, although Defendant characterizes Plaintiff's declaration as self-serving, Plaintiff's declaration testimony is evidence raising the question of whether Plaintiff was threatened retaliation if his injury became reportable.[6]  The Court cannot just dismiss this testimony.  See Feliciano v. City of Miami Beach, 707 F.3d 1244, 1253 (11th Cir. 2013) (stating that court cannot just disregard self-serving statements at the summary judgment stage).  Second, the Court agrees with Plaintiff that the temporal proximity between the time Plaintiff's injury became reportable and the time he received notice of the disciplinary charges is circumstantial evidence of retaliatory motive.  See Araujo v. New Jersey Transit Rail Operations, Inc., 708 F.3d 152, 160 (3d Cir. 2013) ("Temporal proximity between the employee's engagement in a protected activity and the unfavorable personnel action can be circumstantial

---

[6] The statement in Plaintiff's declaration that he initially did not seek medical treatment after he had gone home because he had been warned against it does not conflict directly with Plaintiff's initial statement at the work site that he wanted to go home, elevate his leg, and put ice on it.  Plaintiff is not refuting his initial statement to Browne that he did not want to seek medical treatment and preferred to go home.  Rather, he avers that when he first wanted to seek medical treatment after going home, he did not do so at first because he had been warned against it.

The Court additionally is of the opinion that the hearsay statements in Plaintiff's declaration may be reduced to admissible form at trial.  As such, the Court has considered the statements in the declaration for purposes of ruling on the summary judgment motion.

- 15 -

evidence that the protected activity was a contributing factor to the adverse employment action."). Third, the inconsistency between the initial injury report written by Plaintiff's supervisors, which did not mention an improper drawbar adjustment, and the disciplinary charge eventually brought against Plaintiff for improperly adjusting the drawbar supports an inference of retaliatory motive. Based on this evidence, as well as the disputed issues of fact set forth above, the Court must deny summary judgment on the retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment [Doc. No. 62] and **GRANTS** Plaintiff's Motion to Exclude Undisclosed Evidence and Witness or for Discovery [Doc. No. 64].

SO ORDERED this 31st day of March, 2015.

*s/  CLARENCE COOPER*

CLARENCE COOPER
SENIOR UNITED STATES DISTRICT JUDGE